Nicholas Soltman, CA Bar No. 277418
nsoltman@khiks.com
**Kinsella Holley Iser Kump Steinsapir LLP**
11766 Wilshire Blvd., Ste. 750
Los Angeles, CA 90025
Telephone: (310) 566-9800
Facsimile: (310) 566-9850

Krystle Delgado, AZ Bar No. 031219
krystle@delgadoentertainmentlaw.com
*PHV application forthcoming*
**Delgado Entertainment Law, PLLC**
6803 E. Main Street, Ste. 1116
Scottsdale, AZ 85251
Telephone: (480) 248-0657
Facsimile: (480) 718-8759
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

Zoe Federoff Smerda, an individual, Marek Smerda, an individual, Richard Shaw, an individual, Paul Allender, an individual, Sasha Baxter, an individual, and Lindsay Matheson, an individual.

Plaintiffs,

vs.

The Oracle Management, Inc., a domestic corporation, Daniel Lloyd Davey, an individual, Cradle of Filth Touring Limited, a foreign corporation, and Cradle of Filth LLP, a foreign limited liability partnership.

Defendants.

**CASE NO.:** 2:26-cv-9742

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**

1. **False Designation of Origin (15 U.S. Code § 1125)**
2. **Copyright Infringement (17 U.S.C. § 501)**
3. **Right of Publicity (Cal. Civ. Code § 3344)**
4. **Defamation (Cal. Civ Code § 44)**
5. **Unjust Enrichment for Recorded Musical Performances**
6. **Unjust Enrichment for Plaintiff Baxter's Music Video**

**Performance**
7. **Unfair Competition – Cal. Bus. & Prof. Code § 17200, *et seq*.**
8. **Unjust Enrichment (in the alternative)**

**DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiffs, Zoe Federoff Smerda, Marek Smerda, professionally known as "Ashok", Richard Shaw, Paul Allender, an individual, Sasha Baxter, professionally known as "Sasha Massacre", and Lindsay Matheson, professionally known as "Lindsay Schoolcraft", (collectively, "**Plaintiffs**"), by and through undersigned counsel, and complaining against Defendants, The Oracle Management, Inc., and Daniel Lloyd Davey, professionally known as "Daniel Filth", Cradle Of Filth Touring Limited, and Cradle of Filth LLP, (collectively the "**Defendants**"), for their Complaint, state and allege as follows:

## INTRODUCTION

This action arises out of: (i) the unauthorized use and ongoing commercial exploitation of all Plaintiffs' likenesses and images on Merchandise (defined herein), (ii) unpaid royalties owed to Plaintiff Federoff and Plaintiff Smerda for live performances, (iii) unpaid royalties owed to Plaintiffs Federoff, Smerda, and Matheson for their performances in musical sound recordings, (iv) the unauthorized use of Plaintiff Matheson's copyrighted works by Defendants, (v) defamatory statements made about Plaintiffs Federoff and Smerda following their discontinuation of involvement with Defendants, (vi) unjust enrichment from Plaintiff Baxter's performances in music videos, and (vii) unjust enrichment from the commercial exploitation of Plaintiffs Federoff and Smerda's appearances at in-person events (i.e., meet and greets).

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1125, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

2. This Court has personal jurisdiction over Defendants Cradle Of Filth Touring Limited, and Cradle of Filth LLP, and Daniel Lloyd Davey pursuant to Federal Rule of Civil Procedure 4(k)(2) because:

a. Plaintiffs' claims arise under federal law;

b. Defendants Cradle Of Filth Touring Limited and Cradle of Filth LLP are foreign entities organized under the laws of the United Kingdom with each of their principal places of business outside the United States, and are not subject to the personal jurisdiction of the courts of general jurisdiction of any single state;

c. Defendant Daniel Lloyd Davey is a foreign individual residing in the United Kingdom. Upon information and belief, Defendant Daniel Lloyd Davey is not subject to the personal jurisdiction of the courts of general jurisdiction of any single state within the United States; and

d. The exercise of personal jurisdiction over Defendants Cradle Of Filth Touring Limited, Cradle of Filth LLP, and Daniel Lloyd Davey comports with the United States Constitution and due process because they have purposefully directed substantial, continuous, and systematic business contacts toward the United States as a whole.

3. This Court has general personal jurisdiction over Defendant The Oracle Management, Inc., as it is a corporation organized and existing under the laws of the State of California, with its principal place of business located at 12100 Wilshire Blvd., Suite 1540, Los Angeles, California 90025. Accordingly, Defendant Oracle is essentially at home in this State, and its

continuous and systematic corporate operations render personal jurisdiction proper under Federal Rule of Civil Procedure 4(k)(1)(A) and California Code of Civil Procedure § 410.10.

4. Defendants Cradle Of Filth Touring Limited, Cradle of Filth LLP, and Daniel Lloyd Davey's substantial, continuous, and systematic business contacts toward the United States include, but are not limited to:

a. Performances at extensive tours in numerous venues across the United States over decades, including but not limited to tours in 2016, 2019, 2021, 2022, 2023, 2025, and 2026;

b. Contracts, whether implied or express, with venues across the United States for tour performances;

c. Sales of tickets for tour performances at venues across the United States;

d. Exhibition and promotion of goods for sale at performances across the United States;

e. Sales of goods at the tour performances throughout the United States ;

f. Importation of goods to the United States and/or manufacturing of goods in the United States ; and

g. Direct online sales of goods to consumers in the United States.

5. Venue is proper in the United States District Court for the Central District of California, Western Division, pursuant to 28 U.S.C. § 1391(b)(1) and General Order No. 349. Defendant The Oracle Management, Inc. resides in Los Angeles County, California, which is located within this judicial district and division. All other Defendants are foreign entities not resident in the United States and may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

## THE PARTIES

6. Plaintiff Federoff ("Federoff") is an individual residing in the State of Arizona.

7. Plaintiff Smerda, professionally known as "Ashok" ("**Smerda**"), is an individual residing in the State of Arizona.

8. Plaintiff Allender ("**Allender**") is an individual residing in the State of Arizona.

9. Plaintiff Baxter ("**Baxter**") is an individual and citizen of California residing in Orange County, California.

10. Plaintiff Shaw ("**Shaw**") is an individual residing in England, United Kingdom.

11. Plaintiff Lindsay Matheson ("**Matheson**"), is an individual residing in Ontario, Canada.

12. Defendant Cradle of Filth LLP ("**Cradle of Filth**") is a foreign limited liability partnership organized and existing under the laws of the United Kingdom with its principal place of business in London, United Kingdom.

13. Defendant Cradle Of Filth Touring Limited ("**Touring Entity**") is a foreign corporation organized and existing under the laws of the United Kingdom with its principal place of business in London, United Kingdom. Upon information and belief, Defendant Touring Entity is a subsidiary or member of Defendant Cradle of Filth.

14. Defendant The Oracle Management, Inc. ("**Oracle**") is a corporation organized and existing under the laws of the State of California with a principal place of business at 12100 Wilshire Blvd., Suite 1540, Los Angeles, California 90025, in Los Angeles County.

15. Defendant Daniel Lloyd Davey, professionally known as Daniel Filth ("**Davey**"), is an individual, residing in the United Kingdom. Upon

information and belief, Defendant Davey is member of Defendant Cradle of Filth LLP.

## FACTUAL BACKGROUND

16. This action arises out of Defendants' unauthorized use and commercial exploitation of Plaintiffs' likenesses and images in Merchandise, the performances in the Recordings by Plaintiffs Federoff, Smerda and Matheson, Plaintiff Baxter's performances in Music Videos, and Plaintiff Matheson's copyrighted works, as well as the defamation of Plaintiffs Federoff and Smerda following their discontinuation of involvement with Defendants.

17. Cradle of Filth is a music group that has been performing, recording, and releasing heavy metal music, including a wide range of sub-genres of heavy metal, since in or about 1991.

18. Between 1992 to 1995 and 1999 to 2014, Plaintiff Allender composed, performed and/or recorded with Defendants Davey and Cradle of Filth.

19. Between 2013 and 2019, Plaintiff Matheson composed, performed and/or recorded with Defendants Davey and Cradle of Filth.

20. Between 2014 and 2022, Plaintiff Shaw composed, performed and/or recorded with Defendants Davey and Cradle of Filth.

21. Between 2014 and 2025, Plaintiff Smerda composed, performed and/or recorded with Defendant Davey and Cradle of Filth.

22. Between 2022 and 2025, Plaintiff Federoff composed, performed and/or recorded with Defendants Davey and Cradle of Filth.

23. In 2024, Plaintiff Baxter performed in Music Videos (defined herein) for Defendant Davey and Defendant Cradle of Filth.

### A. Defendants' Infringement of the Copyrighted Sigils

24. On or about April 14, 2014, Plaintiff Matheson created a set of original graphic works (the "**Sigils**").

25. Plaintiff Matheson was issued a Copyright Certificate of Registration from the Canadian Intellectual Property Office for the Sigils, with a Registration Number 1237363. *See* Exhibit A.



26. The Sigils were first published in Whitby, Ontario, Canada. *See id*.

27. Plaintiff Matheson did not grant Defendants the rights to use, copy, modify, display, create derivative works of, license, or otherwise commercially exploit the Sigils.

28. Defendants have infringed on Plaintiff Matheson's rights to the Sigils by copying and creating derivative works of the Sigils in Merchandise and other goods (the "**Sigil Merchandise**"), including but not limited to selling clothing, posters, and stickers directly featuring the Sigils.


£35
BY ORDER SHIRT
BY ORDER OF
£25
BEANIE
£5
STICKERS


YOURS IMMORTALLY


JESUS IS A [redacted]
ACHINGLY BEAUTIFUL
TERROR STRIKES AT
COME DRINK THE WINE OF FORNICATION


MAGNET SET €15
€25
STICKER SET €5
COF
PATCH €5,-

29. Upon information and belief, Defendants continue to infringe on Plaintiff Matheson's copyrights in the Sigils by producing, manufacturing, selling, or otherwise commercially exploiting Sigil Merchandise without Plaintiff Matheson's authorization.

30. Upon information and belief, Defendants have negotiated and entered licensing agreement(s) with third parties to copy, create derivative works of, produce, manufacture, sell, or otherwise commercially exploit the Sigils.






31. Plaintiff Matheson never granted rights to the Sigils or otherwise authorized Defendants to license the Sigils to third parties.

32. Plaintiff Matheson never granted Defendants the right to license any rights to the Sigils to third parties to copy, create derivative works of, or otherwise commercially exploit the Sigils.

**B. Defendants' Non-Payment for Performances in Music Videos**

33. Plaintiff Baxter is a professional model, whose work includes performing in music videos, performing at music festivals and shows, appearing at horror conventions, and hosting nightclubs and events.

34. Defendants organized, produced, and created music videos ("**Music Videos**") synchronized with certain sound recordings featuring performances by Plaintiff Baxter.

35. On or about October 22, 2024, Defendants released a Music Video for the sound recording and embodied composition entitled, *Malignant Perfection*, which featured performances by Plaintiff Baxter.

36. On or about February 20, 2025, Defendants released a Music Video for the sound recording and embodied composition entitled, *To Live Deliciously*, which featured performances by Plaintiff Baxter.

37. Plaintiff Baxter and Defendants never entered into any written agreement regarding her performances in the Music Videos.

38. Defendants never paid or otherwise compensated Plaintiff Baxter for the performances in the Music Videos.

39. Following Plaintiff Baxter's performances in the Music Videos, Defendants began to produce, manufacture, and/or commercially exploit Merchandise featuring her's likenesses and images.

**C. Defendants' Manufacture and Sale of Unauthorized Merchandise**

40. Throughout the periods of collaboration with Plaintiffs, Defendants Cradle of Filth and/or Touring Entity, either directly or by and through their agents, produced and sold merchandise bearing Plaintiffs' likenesses and images (the "**Merchandise**"), including but not limited to clothing and photographs of Plaintiffs.












41. In correspondence dated September 10, 2025, counsel for Defendant Oracle confirmed that Defendant Touring Entity executed a licensing agreement (the "**Night Shift Master Licensing Agreement**") with a third party to produce Merchandise featuring Plaintiffs' likenesses and images.

42. Plaintiffs are not party to the Night Shift Master Licensing Agreement.

43. Plaintiffs were unaware of the Night Shift Master Licensing Agreement prior to the September 10, 2025 correspondence.

44. In the same correspondence, Defendant Oracle's counsel also noted that other third parties had been selling Merchandise with the authorization of one or more Defendants.

45. On or about September 23, 2025, Plaintiffs requested a copy of the Night Shift Master Licensing Agreement from Defendants.

46. On or about September 30, 2025, Defendants Cradle of Filth, Touring Entity, and/or Davey explicitly confirmed, through counsel, their refusal to provide a copy of the Night Shift Master Licensing Agreement.

47. Defendants never provided Plaintiffs with any copy of the Night Shift Master Licensing Agreement.

48. Plaintiffs are still unaware of the specific terms of the Night Shift Master Licensing Agreement because Defendants have never allowed Plaintiffs to review or obtain the Night Shift Master Licensing Agreement.

49. Upon information and belief, Defendants alleged to have granted the rights to use Plaintiffs' likenesses and images in the Night Shift Master Licensing Agreement, without the authorization or consent of Plaintiffs.

50. However, Plaintiffs neither authorized nor consented to Defendants selling Merchandise containing their likenesses and images.

51. Upon information and belief, third parties continue to sell Merchandise containing Plaintiffs' likenesses and images under licensing agreements with Defendants, without Plaintiffs' authorization or consent.

52. Defendants Cradle of Filth and Touring Entity directly profited from the sale of the Merchandise online.

53. Defendants Cradle of Filth and/or Touring Entity directly profited from the sale of the Merchandise at in-person Performances. Upon information and belief, Defendants Cradle of Filth and/or Touring Entity continue to profit

from the sale of the Merchandise sold online.





















54. Upon information and belief, Defendants Cradle of Filth and Touring Entity and continue to profit from the sale of the Merchandise at in-person Performances.

55. Defendants Cradle of Filth and Touring Entity have directly profited and/or continue to profit from the sale of the Merchandise sold through third-party retailers.

56. Upon information and belief, Defendants and third parties, directly or through licensing agreements, have profited and continue to profit from the sale of the Merchandise.

57. Despite Plaintiffs' requests, Defendants have repeatedly denied Plaintiffs any access to accounting statements, sales records, and any licensing agreements pertaining to the Merchandise.

58. Defendants' refusal to seek permission, provide access to accounting statements, sales records, and any licensing agreements for Merchandise featuring Plaintiffs' likenesses and images violates their publicity rights and allows Defendants to be unjustly enriched.

59. Upon information and belief, Defendants intentionally did not seek permission from Plaintiffs to use their publicity rights, so as to ensure they did not interfere.

60. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows them to hide their profit from the sale of Merchandise featuring Plaintiffs' likenesses and images, without Plaintiffs' consent or authorization.

61. Upon information and belief, Defendants Cradle of Filth and Touring Entity continue to directly profit from the sale of Merchandise that features the Plaintiffs' likenesses and images.

62. By continuing to profit from Merchandise featuring Plaintiffs' likenesses and images, Defendants violate Plaintiffs' publicity rights, without permission, and unjustly enrich themselves.

**D. Defendants' Refusal to Provide Accounting for Meet and Greets**

63. Defendants promoted and marketed VIP ticket sales and meet and greets using the likenesses and images of Plaintiffs Smerda and Federoff.

64. At no time did Plaintiffs Federoff and Smerda expressly authorize, consent to, or license Defendants to use Plaintiffs' names, likenesses, or images in connection with the promotion, marketing, or sale of VIP ticket packages or meet and greets.







65. Defendants continually denied Plaintiffs Federoff and Smerda access to meet and greet agreements and revenue accountings, including records of premium ticket pricing for events featuring Plaintiffs Federoff and Smerda.

66. Defendants have been unjustly enriched by the increased ticket prices for meet and greets featuring Plaintiffs Federoff and Smerda.

67. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements, for meet and greets profiting from Plaintiff Federoff's and Plaintiff Smerda's likenesses and images, violates their publicity rights and allows Defendants to be unjustly enriched without interference.

**E. Defendants' Unauthorized Exploitation of Recordings Featuring Plaintiffs' Performances**

68. Plaintiffs Smerda, Matheson, and Shaw performed on the 2017 Release, entitled *Cryptoriana – The Seductiveness of Decay*, and containing ten (10) musical sound recordings ("**2017 Release**") and the 2023 Release, entitled, *Trouble and Their Double Lives*, and containing eighteen (18) musical sound recordings including a bonus track ("**2023 Release**").

69. Plaintiffs Smerda and Shaw performed on the 2021 Release,

entitled, *Existence is Futile*, and containing fourteen (14) musical sound recordings ("**2021 Release**").

70. Plaintiffs Federoff and Smerda performed on the 2025 Release, entitled, *The Screaming of the Valkyries*, and containing nine (9) musical sound recordings ("**2025 Release**").

### 1. Plaintiffs Smerda, Matheson, and Shaw: The 2017 Release and 2023 Release

71. The performances by Plaintiffs Smerda, Matheson, and Shaw are prominent and are featured throughout most, if not all, individual sound recordings on the 2017 Release.

72. Plaintiffs Smerda, Matheson, and Shaw never expressly authorized the release and/or commercial exploitation of the 2017 Release featuring their performances.

73. Plaintiffs Smerda, Matheson, and Shaw have not been compensated for their performances in the sound recordings on the 2017 Release.

74. At no time did Plaintiffs Smerda, Matheson, or Shaw waive any rights to royalties, accounting, or other benefits to which they are entitled from Defendants' commercial exploitation of the 2017 Release.

75. Defendants have continually denied Plaintiffs Smerda, Matheson, and Shaw access to a full accounting of royalties earned from the 2017 Release.

76. Defendants had, and continue to have, a duty to provide Plaintiffs Smerda, Shaw and Matheson with regular and accurate royalty accountings for the exploitation of the 2017 Release.

77. Defendants have continually denied Plaintiffs Smerda, Matheson, and Shaw access to any licensing agreements pertaining to the 2017 Release, or any accounting of royalties earned from it.

78. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements for the commercial exploitation of the 2017 Release featuring the performances of Plaintiffs Smerda, Matheson, and Shaw violates their rights to revenue generated from their performances.

79. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the performances of Plaintiffs Smerda, Matheson, and Shaw in the 2017 Release without their consent or authorization.

80. Upon information and belief, the sound recordings in the 2023 Release were recorded during live performances at venues between 2014 and 2019.

81. The performances by Plaintiffs Smerda, Matheson, and Shaw in the 2023 Release are prominent and are featured throughout most, if not all, individual sound recordings on the 2023 Release.

82. Plaintiffs Smerda and Matheson never expressly authorized the release and/or commercial exploitation of the 2023 Release featuring their performances.

83. Plaintiffs Smerda and Matheson have not been properly credited for their performances in the 2023 Release.

84. After recording the 2023 Release, Plaintiff Shaw ceased association with the Defendants.

85. Plaintiff Shaw received five hundred British pounds (£500) for his performances on the 2023 Release.

86. Plaintiffs Smerda and Matheson have not been compensated for their performances in the sound recordings on the 2023 Release.

87. Defendants refused to pay Plaintiffs Smerda and Matheson for their performances on the 2023 Release.

88. At no time did Plaintiffs Smerda or Matheson waive any rights to royalties, accounting, or other benefits to which they are entitled from Defendants' commercial exploitation of the 2023 Release.

89. Defendants have continually denied Plaintiffs Smerda and Matheson access to a full accounting of royalties earned from the 2023 Release.

90. Defendants had, and continue to have, a duty to provide Plaintiffs Smerda and Matheson with regular and accurate royalty accountings for the exploitation of the 2023 Release.

91. Defendants have continually denied Plaintiffs Smerda and Matheson access to any licensing agreements pertaining to the 2023 Release, or any accounting of royalties earned from it.

92. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements for the commercial exploitation of the 2023 Release featuring the performances of Plaintiffs Smerda and Matheson violates their rights in revenue generated from their performances.

93. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the performances of Plaintiffs Smerda and Matheson in the 2023 Release, without their consent or authorization.

**2. Plaintiffs Smerda and Shaw: The 2021 Release**

94. The performances by Plaintiffs Smerda and Shaw are prominent and are featured throughout most, if not all, individual sound recordings on the 2021 Release.

95. Plaintiffs Smerda and Shaw never expressly authorized the release and/or commercial exploitation of the 2021 Release featuring their performances.

96. Plaintiffs Smerda and Shaw have not been compensated for their performances in the sound recordings on the 2021 Release.

97. At no time did Plaintiffs Smerda or Shaw waive any rights to royalties, accounting, or other benefits to which they are entitled from Defendants' commercial exploitation of the 2021 Release.

98. Defendants have continually denied Plaintiffs Smerda and Shaw access to a full accounting of royalties earned from the 2021 Release.

99. Defendants had, and continue to have, a duty to provide Plaintiffs Smerda and Shaw with regular and accurate royalty accountings for the exploitation of the 2021 Release.

100. Defendants have continually denied Plaintiffs Smerda and Shaw access to any licensing agreements pertaining to the 2021 Release, or any accounting of royalties earned from it.

101. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements for the commercial exploitation of the 2021 Release featuring the performances of Plaintiffs Smerda and Shaw violates their rights in revenue generated from their performances.

102. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the performances of Plaintiffs Smerda and Shaw in the 2021 Release, without their consent or authorization.

**3. Plaintiffs Federoff and Smerda: The 2025 Release**

103. The performances by Plaintiffs Federoff and Smerda are prominent and are featured throughout most, if not all, individual sound recordings on the 2025 Release.

104. Plaintiffs Smerda, Matheson, and Shaw never expressly authorized the release and/or commercial exploitation of the 2025 Release

featuring their performances.

105. Plaintiffs Federoff and Smerda have not been compensated for their performances in the sound recordings comprising the 2025 Release.

106. At no time did Plaintiffs Federoff or Smerda waive any rights to royalties, accounting, or other benefits to which they are entitled from Defendants' commercial exploitation of the 2025 Release.

107. Defendants have continually denied Plaintiffs Federoff and Smerda access to a full accounting of royalties earned from the 2025 Release.

108. Defendants had, and continue to have, a duty to provide Plaintiffs Federoff and Smerda with regular and accurate royalty accountings for the exploitation of the 2025 Release.

109. Defendants have continually denied Plaintiffs Federoff and Smerda access to any licensing agreements pertaining to the 2025 Release, or any accounting of royalties earned from it.

110. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements for the commercial exploitation of the 2025 Release featuring the performances of Plaintiffs Federoff and Smerda violates their rights in revenue generated from their performances.

111. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the performances of Plaintiffs Federoff and Smerda in the 2025 Release, without their consent or authorization.

**F. The Publishing Agreement**

112. In June 2025, Plaintiffs Federoff and Smerda, Defendant Davey, and other individual musicians composing, recording, and performing with Defendant Cradle of Filth entered into a publishing agreement with Peer Music (the "**Publishing Agreement**").

113. Upon information and belief, Defendant Oracle or its representative or agent negotiated or facilitated the execution of the Publishing Agreement.

114. Upon information and belief, Defendant Oracle or its representatives, members, or agents have negotiated or facilitated the execution of other agreements for or on behalf of Defendants Cradle of Filth, Touring Entity, and Davey.

115. Defendant Oracle, and its representative Dez Fafara, were not party to the Publishing Agreement, and were not otherwise entitled to any royalties obtained thereunder.

116. On or about July 10, 2025, Dez Fafara, on behalf of Oracle, sent a group message to Plaintiffs and other individuals performing with Defendant Cradle of Filth that each recipient made £4,800 and "after legal and commissions [each individual party to the contract] made 3400."







117. After significant resistance and delay by Defendant Oracle and/or its authorized agents, representatives, or members, Plaintiffs Federoff and Smerda were ultimately able to obtain the unauthorized portion of the publishing royalties under the Publishing Agreement, despite the efforts of Defendant Oracle to obtain said royalties without authorization.

118. Plaintiffs do not know whether Defendants have received a share of any publishing royalties to which Plaintiffs are entitled during or since their association with Defendants.

119. Upon information and belief, Defendants have refused and continue to refuse to provide Plaintiffs Federoff and Smerda with information on whether Defendants have obtained publishing royalties owed to Plaintiffs.

**G. Plaintiffs Federoff and Smerda's Disassociation from Defendants**

120. In or about August 2025, Defendant Davey, either individually or through counsel, offered to enter a written contract (the "**Offer**") with Plaintiffs Federoff and Smerda that, if signed, would have granted him "the exclusive right to use [Plaintiffs Federoff and Smerda's] name[s], approved likenesses, and approved biograph[ies] for commercial exploitation."

121. This proposed Offer would have also granted Defendant Davey the right to contributions from Plaintiffs Federoff and Smerda to future sound recordings and compositions.

122. Plaintiffs Federoff and Smerda refused Defendant Davey's Offer.

**H. Defendants' Refusal to Pay Plaintiffs Federoff and Smerda for Final Live Performances**

123. On or about August 21, 2025, Plaintiffs Federoff and Smerda performed with Defendant Cradle of filth and/or Davey at *Mirrhage* in Limeira, Brazil (the "**August 21 Performance**").

124. On or about August 22, 2025, Plaintiffs Federoff and Smerda performed with Defendant Cradle of filth and/or Davey at *Tork N' Roll* in Curitiba, Brazil (the "**August 22 Performance**").

125. On or about August 23, 2025, Plaintiffs Federoff and Smerda performed with Defendant Cradle of filth and/or Davey at *Carioca Club* in São Paulo, Brazil (the "**August 23 Performance**").

126. On or about August 24, 2025, Plaintiff Federoff discontinued performing and recording with Defendants Cradle of Filth and Davey.

127. On or about August 24, 2025, Plaintiff Smerda performed with Defendant Cradle of Filth and/or Davey at *Groove* in Buenos Aires, Argentina (the "**August 24 Performance**", together with the August 21 Performance, the August 22 Performance, and the August 23 Performance, the "**Live**

**Performances**”).

128. On or about August 26, 2025, Defendants prohibited Plaintiff Smerda from further performing and recording with Defendants.

129. Plaintiff Smerda was prepared to perform with Defendants Cradle of Filth and/or Davey at a scheduled performance on August 26, 2025.

130. Defendants have not compensated Plaintiffs Federoff and Smerda for the Live Performances.

131. Defendants refuse to compensate Plaintiffs Federoff and Smerda for the Live Performances.

132. Defendants’ forced removal of Plaintiff Smerda from collaboration caused reputational harm to Plaintiff Smerda in the music industry generally, as well as the heavy metal industry specifically.

**I. Defamation of Plaintiffs Federoff and Smerda Following Disassociation from Defendants**

133. On or about August 29, 2025, after Plaintiffs Federoff and Smerda discontinued association with Defendants, Defendants Davey and Cradle of Filth, through an official Cradle of Filth social media account, publicly posted a message on Facebook (the “**Post**”) about the discontinued association of Plaintiffs from Defendants.


Cradle of Filth

Posts About Photos Reels More

2. No one in the band is prohibited from working with other groups and substituting their income. We currently schedule tours for about 40% of the year with the rest of the year being available for other commitments. Many of my bandmates have other projects, as can be seen on their own social media pages. WE DO NOT prohibit our musicians from work commitments with other bands, we only ask to plan sufficiently, weaving schedules together as far in advance as the situation allows.

3. I’m sad to see that Zoe is picking facts to fit an agenda but am willing to share the full story including the description of events of the first three days of the South American tour, to show a more balanced picture so that people can make their judgements based on the wider context.

During those first days, heavy drinking, escalating arguments, and repeated public disputes created a very disruptive atmosphere for everyone involved. I personally witnessed heated exchanges between Zoe and Ashok that included both verbal and physical abuse, culminating in a public display in front of the hotel and fans who had gathered for last minute autographs in Sao Paolo. This was not an isolated incident but part of a pattern of abusive behavior that strained the entire team.

134. In the Post, Defendant Davey stated that Plaintiffs Federoff and Smerda engaged in physical and verbal abuse.

135. In the Post, Defendant Davey stated that Plaintiffs Federoff and Smerda were engaged in "heated exchanges," including "a pattern of abusive behavior that strained the entire team."

136. In the Post, Defendant Davey directly stated and/or implied that Plaintiff Federoff consumed alcohol while pregnant, facetiously asking the loaded question, "if [Plaintiff Federoff] was pregnant, why was she drinking at all?"




137. Defendant Davey's statement about Plaintiff Federoff drinking while pregnant suggests, implies, and/or states that Plaintiff Federoff's drinking while pregnant was causally connected to her miscarriage.

138. Defendant Davey's statements about Plaintiff Federoff drinking while pregnant were untrue.

139. Defendant Davey's statement about Plaintiff Federoff drinking while pregnant has caused significant harm to Plaintiff Federoff's reputation in the music industry, her community, and beyond.




140. Defendant Davey's statement about Plaintiff Federoff drinking while pregnant has caused Plaintiff Federoff harm, including reputational damage and loss of employment opportunities.

141. In the Post, Defendant Davey stated that Plaintiff Smerda has alcoholism, referring to "Ashok's alcoholism."



142. Along with the same Post, Defendant Davey attached out-of context messages between Plaintiff Smerda and a third party.

143. Upon information and belief, the party that Plaintiff Smerda messaged was Dez Fafara, or another authorized representative, agent, or affiliate of Defendant Oracle.

144. Defendant Davey's statements in the Post were untrue.

145. Defendant Davey's statements in the Post caused reputational harm to Plaintiffs Federoff and Smerda.

146. Defendant Davey's false statements in the Post have caused Plaintiffs Federoff and Smerda ongoing harm, including reputational damage and loss of employment opportunities.

147. Defendants' ongoing commercial exploitation of the Recordings and Merchandise, including profit obtained therefrom, unduly benefits them and causes ongoing financial harm, reputational harm, and lost profits to Plaintiffs.

**COUNT 1: False Designation of Origin—15 U.S.C. § 1125(a)**
**(all Plaintiffs against all Defendants)**

148. Plaintiffs incorporate the foregoing allegations herein as if restated in full.

149. Defendants' use, promotion, offers to sell, sale, and distribution of the subject Merchandise violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

150. Plaintiffs never authorized, licensed, or consented to Defendants producing, manufacturing, distributing, or commercially exploiting the Merchandise, or licensing third parties to do so.

151. Defendants' use of Plaintiffs' likenesses and images in connection with the Merchandise is likely to cause consumers to believe that Plaintiffs are affiliated with, sponsor, or endorse Defendants and their

performances; when in fact Plaintiffs do not.

152. Upon information and belief, Defendants sold and continue to sell Merchandise bearing the Plaintiffs' likenesses and images following Plaintiffs' disassociation from Defendants.

153. Upon information and belief, Defendant Touring Entity entered into licensing agreements with third parties allegedly granting rights to produce, manufacture, or commercially exploit Merchandise featuring Plaintiffs' likenesses and images, without Plaintiffs' authorization or consent.

154. Third parties to whom Defendant Touring Entity allegedly licensed or granted rights to produce, manufacture, or commercially exploit Merchandise featuring the Plaintiffs' likenesses and images have sold, and continue to sell, such Merchandise without Plaintiffs' authorization or consent.

155. Upon information and belief, Defendant Oracle was party to, participated in, facilitated the execution of, and/or negotiated agreements to manufacture, sell, and/or produce Merchandise, or to otherwise use Plaintiffs' likenesses and images.

156. Upon information and belief, Defendant Oracle profited, and continues to profit, from the commercial exploitation of Plaintiffs' likenesses and images in Merchandise through its agreement(s) with Defendants Davey, Touring Entity, and/or Cradle of Filth.

157. Upon information and belief, all Defendants continue to profit from the sale of Merchandise at performances and via third-party retailers.

158. Since Defendants are fully aware that Plaintiffs have ceased any association with Defendants, their ongoing commercial exploitation of Plaintiffs' likenesses and images in Merchandise is willful and intentional.

159. Defendants' use of Plaintiffs' likenesses and images has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including at

least substantial and irreparable injury to the goodwill and reputation associated with the Plaintiffs' likenesses and images.

160. Plaintiffs are entitled to injunctive relief, as well as an award of Defendants' profits, Plaintiffs' damages, the costs of this action, and, because Defendants' conduct is willful, enhanced damages and attorneys' fees. 15 U.S.C. § 1117(a).

**COUNT 2: Copyright Infringement**
**(Plaintiff Matheson against Defendants Cradle of Filth, Touring Entity, and Davey)**

161. Plaintiff incorporates the foregoing allegations herein as if restated in full.

162. The Sigils are registered with the Canadian Intellectual Property Office, Registration No. 1237363. *See* Exhibit A.

163. The Sigils are foreign works created in Canada subject to the Berne Convention for the Protection of Literary and Artistic Works and are exempt from the registration requirements of 17 U.S.C. § 411.

164. The Sigils are foreign works because the Sigils were first published in Whitby, Ontario, Canada, and were not published simultaneously in the United States. *See id.*; 17 U.S.C. § 101.

165. At all times pertinent to this Complaint, Plaintiff Matheson has been, and still is, the owner of all right, title, and interest in and to the Sigils.

166. Plaintiff Matheson has never assigned, licensed, or otherwise transferred any of these rights to Defendants; nor has Plaintiff Matheson ever authorized Defendants to copy, distribute, or license the Sigils.

167. Defendants directly copied the Sigils in designs and marketing materials for the Merchandise.

168. Defendants also created derivative works of the Sigils for use in the Merchandise, without Plaintiff Matheson's permission.

169. Defendants violated, and continue to violate, Plaintiff Matheson's exclusive rights in the Sigils by copying them and creating derivative works of them in designs and marketing materials for the Merchandise. 17 U.S. C. § 106(1).

170. Defendants have directly, vicariously, and/or contributorily infringed Plaintiff Matheson's rights in the Sigils by reproducing, publicly displaying, publishing and/or distributing unauthorized copies and/or derivatives of the Sigils in violation of 17 U.S.C. § 501 *et seq*.

171. Defendants have profited, directly or indirectly, from the commercial exploitation, sale, and/or marketing of Merchandise containing Plaintiff Matheson's copyrighted work.

172. Upon information and belief, Defendants continue to profit, directly or indirectly, from the commercial exploitation, sale, and/or marketing of Merchandise containing Plaintiff Matheson's copyrighted works.

173. Defendants have failed to compensate Plaintiff Matheson for continued profits derived from the ongoing commercial exploitation of the Sigils and derivative works.

174. Defendants, either directly or indirectly, copied works that they did not own for their sole commercial gain. Defendants' infringing conduct alleged herein was, and continues to be, willful and with full knowledge of Plaintiff Matheson's rights, and has enabled Defendants to illegally profit therefrom.

175. As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury. Unless Defendants' infringing conduct is enjoined by this Court, Defendants will continue to infringe the Sigils. Plaintiff is therefore entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants' ongoing infringing conduct.

176. As a direct and proximate result of Defendants' infringing conduct, Plaintiff Matheson has been harmed and is entitled to damages in an amount to be proven at trial. Plaintiff Matheson is also entitled to a recovery of Defendants' profits attributable to Defendants' infringing conduct alleged herein, including from any and all sales of the infringing uses of the Sigils and any other use incorporating or embodying the Sigils, and an accounting of and a constructive trust with respect to such profits. 17 U.S.C. § 504(b).

177. Plaintiff Matheson seeks injunctive relief, destruction of all infringing materials containing the Sigils and derivative works, Defendants' profits and actual damages, pursuant to 17 U.S.C § 504(b), and, to the extent permitted by law, reasonable attorneys' fees and costs.

**COUNT 3: Right of Publicity – Cal. Civ. Code § 3344**
**(All Plaintiffs against all Defendants)**

178. Plaintiffs incorporate the foregoing allegations herein as if restated in full.

179. The California Right of Publicity Statute prohibits, and provides statutory damages for, the knowing misappropriation of an individual's name, voice, signature, photograph, or likeness in advertising or soliciting without the individual's prior consent. *See* Cal. Civ. Code § 3344(a).

180. Defendants knowingly sold and, upon information and belief, continue to sell Merchandise bearing the Plaintiffs' likenesses and images following their disassociation from Defendants.

181. Defendants knowingly appropriated, and continue to appropriate, the commercial value of Plaintiffs' likenesses by selling Merchandise bearing the Plaintiffs' likenesses and images following their disassociation from Defendants.

182. Additionally, the use of Plaintiffs' likenesses on the Merchandise constitutes commercial use and purpose because it depicts the individuals and

their physical appearances in the roles in which they gained their fame.

183. Plaintiffs never authorized, licensed, or consented to Defendants producing, manufacturing, distributing, or commercially exploiting the Merchandise, or licensing third parties to do so.

184. By using their identities in marketing and Merchandise, Defendants derived economic value from Plaintiffs' identities and, in turn, deprived Plaintiffs such value.

185. Upon information and belief, Defendant Touring Entity knowingly entered into licensing agreements with third parties alleging granting rights to produce, manufacture, and/or commercially exploit Merchandise featuring Plaintiffs' likenesses and images, without Plaintiffs' authorization or consent.

186. Defendant Oracle was party to, participated in, facilitated the execution of and/or negotiated agreements to produce, manufacture, and/or commercially exploit Merchandise featuring Plaintiffs' likenesses and images, without Plaintiffs' authorization or consent.

187. Upon information and belief, Defendants knowingly appropriated, and continue to appropriate, the commercial value of Plaintiffs' likenesses by entering into licensing agreements with third parties for the production, sale, and/or commercial exploitation of Merchandise bearing the Plaintiffs' likenesses and images following their disassociation from Defendants.

188. Defendants Davey, Touring Entity, and Cradle of Filth knowingly have profited and, upon information and belief, continue to profit from the commercial exploitation of Plaintiffs' likenesses and images in Merchandise.

189. Defendants did not fully compensate Plaintiffs for the commercial exploitation of the Merchandise before Plaintiffs' disassociation.

190. Defendants did not compensate Plaintiffs (in the form of a royalty

or otherwise) for its use of their identities since their disassociation. This conduct resulted in economic injury to Plaintiffs.

191. Defendants have refused, and continue to refuse, to provide any accounting of commercial exploitation of the Merchandise to Plaintiffs.

192. Defendants' continued misappropriation of Plaintiffs' likenesses and images has harmed Plaintiffs' reputations, goodwill, and ability to control the commercial value of their identities and caused both pecuniary and non-pecuniary injury.

193. Defendants Davey, Touring Entity, and Cradle of Filth have profited and, upon information and belief, continue to profit from the commercial exploitation of Plaintiffs' likenesses and images in Merchandise.

194. Upon information and belief, Defendant Oracle has an agreement with Defendants Davey, Touring Entity and/or Cradle of Filth under which Defendant Oracle obtains a portion of profits obtained by Defendants Davey, Touring Entity and/or Cradle of Filth.

195. Plaintiffs are not party to any agreement with Defendant Oracle that would entitle it to any portion of Plaintiffs' profits.

196. Upon information and belief, Oracle knowingly profited, and continues to profit, from the appropriation and commercial exploitation of Plaintiffs' likenesses and images in Merchandise through its agreement with Defendants Davey, Touring Entity and/or Cradle of Filth.

197. Based on Defendants' violations of the California Right of Publicity Statute, Plaintiffs are entitled to: (1) an injunction requiring Defendants to cease using their images or likenesses on Merchandise and any marketing materials, (2) the greater of an award of actual damages (including profits derived from the unauthorized use of Plaintiffs' images or likenesses) or statutory damages of $750 per violation to each Plaintiff, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees.

Cal. Civ. Code § 3344(a).

## **COUNT 4: Defamation**
## **(Plaintiffs Federoff and Smerda against Defendant Davey)**

198. Plaintiffs incorporate the foregoing allegations herein as if restated in full.

199. As set forth above, Defendant Davey falsely stated and/or implied that Plaintiff Federoff consumed alcohol while pregnant, by posing the loaded question "if [Plaintiff Federoff] was pregnant, why was she drinking at all?" in his public Post on Facebook.

200. Defendant Davey's statement about Plaintiff Federoff drinking while pregnant states that Plaintiff Federoff's drinking while pregnant was causally connected to her miscarriage.

201. Defendant Davey's statement about Plaintiff Federoff drinking while pregnant caused significant harm to Plaintiff Federoff's reputation in the music industry, her community, and beyond.

202. In his public Post, Defendant Davey stated that Plaintiff Smerda has alcoholism, referring to "Ashok's alcoholism."

203. Defendant Davey's statements about Plaintiffs Federoff and Smerda in the Post were false.

204. Defendant Davey made these false statements recklessly, or with actual malice, knowing the statements were false or with reckless disregard for their truth or falsity.

205. Defendant Davey knew that these false statements were inherently harmful because they would expose Plaintiffs Federoff and Smerda into disrepute, contempt, or ridicule.

206. Defendant Davey specifically intended and reasonably understood that the false statements that he made were about Plaintiffs Federoff and Smerda.

207. Defendant Davey identified Plaintiffs Federoff and Smerda clearly and directly, by name, in the Post.

208. Defendant Davey published these false statements to third parties, including the general public, and such publication was not privileged.

209. The full extent to which Defendant Davey has published and distributed defamatory statements about Plaintiffs Federoff and Smerda will be the subject of discovery in this case.

210. As a direct result of Defendant Davey's statements, Plaintiffs Federoff and Smerda have suffered harm to their reputations and have suffered shame, mortification, and embarrassment, loss of employment opportunities, and other ongoing damages.

211. Plaintiffs Federoff and Smerda are informed and believe, and thereon allege, that the aforementioned acts of Defendant Davey were willful, oppressive, fraudulent, and/or malicious. The conduct of Defendant Davey in publishing these false statements about Plaintiffs Federoff and Smerda, with knowledge of their falsity, for the express purpose of harming Plaintiffs Federoff and Smerda is intentional and despicable. Plaintiffs Federoff and Smerda are therefore entitled to punitive and exemplary damages under California law.

## **COUNT 5: Unjust Enrichment (Plaintiffs Federoff, Smerda, Shaw, and Matheson against all Defendants)**

212. Plaintiffs incorporate the foregoing allegations herein as if restated in full.

213. The musical performances by Plaintiffs Smerda, Shaw, and Matheson are featured prominently and integrally on the recordings of the 2017 Release, which were intended to be merged with the contributions of Defendant Davey and other individual musicians.

214. Defendants have, directly or indirectly, commercially exploited and continue to exploit the 2017 Release.

215. Plaintiffs Smerda, Shaw, and Matheson have not been compensated for the continued exploitation of the 2017 Release featuring their musical performances.

216. Defendants have denied Plaintiffs Smerda, Shaw, and Matheson access to the accounting for the commercial exploitation of the 2017 Release.

217. Defendants' ongoing commercial exploitation of the 2017 Release, including profit obtained from the performances by Plaintiffs Smerda, Shaw, and Matheson, unduly benefits Defendants and causes ongoing financial harm and lost profits to Plaintiffs Smerda, Shaw, and Matheson.

218. Defendants' refusal to provide access to any accounting statements, sales records, or licensing agreements allows Defendants to continue to profit from the 2017 Release featuring the performances by Plaintiffs Smerda, Shaw, and Matheson, without the consent or authorization of Plaintiffs Smerda, Shaw, and Matheson.

219. Defendants have been unjustly enriched by the profits from the exploitation of the 2017 Release featuring the performances by Plaintiffs Smerda, Shaw, and Matheson.

220. Defendants have denied Plaintiffs Smerda, Shaw, and Matheson access to any licensing agreements for the commercial exploitation of the 2017 Release, including any agreements Defendants have entered into with record labels to distribute it.

221. Defendants' commercial exploitation of the 2017 Release is at the impoverishment and/or expense of Plaintiffs Smerda, Shaw, and Matheson.

222. It would be inequitable and unjust for Defendants to retain the profits derived from the unauthorized exploitation of the performances by Plaintiffs Smerda, Shaw, and Matheson in the 2017 Release without

compensating them.

223. The musical performances by Plaintiffs Smerda and Shaw are featured prominently and integrally on the recordings of the 2021 Release, which were intended to be merged with the contributions of Defendant Davey and other individual musicians.

224. Defendants have, directly or indirectly, commercially exploited and continue to exploit the 2021 Release.

225. Plaintiffs Smerda and Shaw have not been compensated for the continued exploitation of the 2021 Release featuring their musical performances.

226. Defendants have denied Plaintiffs Smerda and Shaw access to the accounting for the commercial exploitation of the 2021 Release.

227. Defendants' ongoing commercial exploitation of the 2021 Release, including profit obtained from the performances by Plaintiffs Smerda and Shaw in the 2021 Release, unduly benefits Defendants and causes ongoing financial harm, reputational harm, and lost profits to Plaintiffs Smerda and Shaw.

228. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the 2021 Release featuring the performances by Plaintiffs Smerda and Shaw, without their consent or authorization.

229. Defendants have been unjustly enriched by the profits from the exploitation of the 2021 Release featuring the performances by Plaintiffs Smerda and Shaw.

230. Defendants' commercial exploitation of the 2021 Release is at the impoverishment and/or expense of Plaintiffs Smerda and Shaw.

231. Defendants have denied Plaintiffs Smerda and Shaw access to any licensing agreements for the commercial exploitation of the 2021 Release,

including any agreements Defendants have entered into with record labels to distribute it.

232. It would be inequitable and unjust for Defendants to retain the profits derived from the unauthorized exploitation of the performances by Plaintiffs Smerda and Shaw in the 2021 Release without compensating them.

233. The musical performances by Plaintiffs Smerda, Shaw, and Matheson are featured prominently and integrally on the recordings of the 2023 Release, which were intended to be merged with the contributions of Defendant Davey and other individual musicians.

234. Defendants have, directly or indirectly, commercially exploited and continue to exploit the 2023 Release.

235. Plaintiffs Smerda and Matheson have not been compensated for the continued exploitation of the 2023 Release featuring their musical performances.

236. Defendants have denied Plaintiffs Smerda and Matheson access to the accounting for the commercial exploitation of the 2023 Release.

237. Plaintiffs Smerda and Matheson have not been properly or accurately credited on the 2023 Release.

238. Defendants compensated Plaintiff Shaw for his performances in the 2023 Release.

239. Defendants' payment of Plaintiff Shaw for his performances in the 2023 Release supports that Plaintiffs Smerda and Matheson are also entitled to compensation for their performances.

240. Defendants' ongoing commercial exploitation of the 2023 Release, including profit obtained from the performances by Plaintiffs Smerda and Matheson, unduly benefits Defendants and causes ongoing financial harm, reputational harm, and lost profits to Plaintiffs Smerda and Matheson.

241. Defendants' commercial exploitation of the 2023 Release is at the

impoverishment and/or expense of Plaintiffs Smerda and Matheson.

242. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the 2023 Release featuring the performances by Plaintiffs Smerda and Matheson, without their consent or authorization.

243. Defendants have been unjustly enriched by the profits from the exploitation of the 2023 Release featuring the performances by Plaintiffs Smerda and Matheson.

244. It would be inequitable and unjust for Defendants to retain the profits derived from the unauthorized exploitation of the performances by Plaintiffs Smerda and Matheson in the 2023 Release without compensating them.

245. The musical performances by Plaintiffs Federoff and Smerda are featured prominently and integrally on the recordings of the 2025 Release, which were intended to be merged with the contributions of Defendant Davey and other individual musicians.

246. Defendants have, directly or indirectly, commercially exploited and continue to exploit the 2025 Release.

247. Plaintiffs Federoff and Smerda have not been compensated for the continued exploitation of the 2025 Release featuring their musical performances.

248. Defendants have denied Plaintiffs Federoff and Smerda access to the accounting for the commercial exploitation of the 2025 Release.

249. Defendants have denied Plaintiffs Federoff and Smerda access to any licensing agreements for the commercial exploitation of the 2025 Release, including any agreements Defendants may have entered into with record labels to distribute it.

250. Defendant Oracle's attempt to take a share of Plaintiff Federoff's

and Plaintiff Smerda's publishing advance, without any legal basis, underscores the Defendants' bad faith efforts to be unjustly enriched.

251. Defendants' ongoing commercial exploitation of the 2025 Release, including profit obtained from the performances by Plaintiffs Federoff and Smerda, unduly benefits Defendants and causes ongoing financial harm, reputational harm, and lost profits to Plaintiffs Federoff and Smerda.

252. Defendants' commercial exploitation of the 2025 Release is at the impoverishment and/or expense of Plaintiffs Federoff and Smerda.

253. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the 2025 Release featuring the performances by Plaintiffs Federoff and Smerda, without their consent or authorization.

254. Defendants have been unjustly enriched by the profits from the exploitation of the 2025 Release, featuring the performances by Plaintiffs Federoff and Smerda.

255. It would be inequitable and unjust for Defendants to retain the profits derived from the unauthorized exploitation of the performances by Plaintiffs Federoff and Smerda in the 2025 Release, without compensating them.

256. Plaintiffs Federoff, Smerda, Shaw, and Matheson have no alternative remedy at law for the unjust enrichment of Defendants by the commercial exploitation of their performances in the Recordings.

257. Plaintiffs Federoff, Smerda, Shaw, and Matheson are also informed and believe, and thereupon allege, that Defendants' commercial exploitation of their performances in the Recordings has conferred benefits on Defendants, for which Plaintiffs seek restitution. Defendants have profited by reason of their unlawful acts as alleged herein. Therefore, Plaintiffs Federoff,

Smerda, Shaw, and Matheson also seek an order requiring the Defendants to disgorge all of their ill-gotten gains.

**COUNT 6: Unjust Enrichment**
**(Plaintiff Baxter against all Defendants)**

258. Plaintiff incorporates the foregoing allegations herein as if restated in full.

259. Plaintiff Baxter appears, performs, and models commercially as her primary source of income.

260. Plaintiff Baxter appeared and performed in the Music Videos for Defendants with the mutual understanding that Plaintiff Baxter would be compensated.

261. Defendants produced and distributed the Music Videos featuring Plaintiff Baxter's performances.

262. Defendants have commercially exploited, and continue to exploit, Music Videos featuring Plaintiff Baxter's likeness and image, a benefit derived directly from Plaintiff Baxter's identity and reputation.

263. Defendants never compensated Plaintiff Baxter for performances during the production of the Music Videos.

264. Plaintiff Baxter's performances are featured prominently and integrally in the Music Videos.

265. Defendants have, directly or indirectly, commercially exploited and continue to exploit the Music Videos.

266. Plaintiff Baxter has not been compensated for the continued exploitation of the Music Videos.

267. Defendants have refused, and still refuse, to compensate Plaintiff Baxter for performances in the Music Videos.

268. Defendants' refusal to compensate Plaintiff Baxter for her performances in the Music Videos unjustly enriches Defendants to her

detriment.

269. Defendants' commercial exploitation of the Music Video is at the impoverishment and/or expense of Plaintiff Baxter.

270. Defendants have been unjustly enriched by the profits from the exploitation of Plaintiff Baxter's performances in the Music Videos.

271. It would be inequitable and unjust for Defendants to retain the profits derived from Plaintiff Baxter's performances in the Music Videos without compensating her.

272. Plaintiff Baxter has no alternative remedy at law for the unjust enrichment of Defendants by the commercial exploitation of her performances in the Music Videos.

273. Plaintiff Baxter is also informed and believes, and thereupon alleges, that Defendants' commercial exploitation of her performances in the Music Videos has conferred benefits on Defendants, for which Plaintiff seeks restitution. Defendants have profited by reason of their unlawful acts as alleged herein. Therefore, Plaintiff also seeks an order requiring the Defendants to disgorge all of their ill-gotten gains.

**COUNT 7: Unfair Competition – Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(All Plaintiffs against all Defendants)**

274. Plaintiffs incorporate paragraphs 1-147 herein as if restated in full.

275. California Business and Professions Code Section 17200, *et seq*., proscribes any act amounting to unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

276. In advertising, marketing, promoting, offering for sale, selling, distributing, and making false and misleading assertions of fact regarding the Merchandise and marketing materials, Defendants' acts described above

constitute unfair competition in violation of California Business and Professions Code Section 17200, *et seq*.

277. As a direct and proximate result of the Defendants' unfair conduct as described above, Plaintiffs have lost money and suffered irreparable harm insofar as the Defendants' conduct has damaged the business, reputation, goodwill, and integrity of Plaintiffs.

278. While Plaintiffs have suffered damages, and continue to suffer damages, as a result of Defendants' conduct, monetary damages alone will not afford Plaintiffs adequate relief. As such, Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they have suffered and will continue to suffer if Defendants' conduct is allowed to continue.

279. Plaintiffs are informed and believe, and thereupon allege, that unless enjoined by this Court, Defendants, and any person or entity complicit or participating with them, and each of them, will continue to engage in unfair competition and unlawful conduct. Therefore, Plaintiffs seek injunctive relief described herein.

280. Plaintiffs are also informed and believe, and thereupon allege, that use of Plaintiffs' images and likenesses has conferred benefits on Defendants, for which Plaintiffs seek restitution. Defendants have profited by reason of their acts of unfair competition and unlawful acts as alleged herein. Therefore, Plaintiffs also seek an order requiring the Defendants to disgorge all of their ill-gotten gains.

## COUNT 8: Unjust Enrichment
## (All Plaintiffs against all Defendants – in the alternative)

281. Plaintiffs incorporate paragraphs 1-147, 178-197, and 274-280 herein as if restated in full.

282. Defendants have sold and continue to sell Merchandise featuring

the Plaintiffs' likenesses and images, receiving a benefit derived directly from Plaintiffs' identities and reputations.

283. Defendants have sold and continue to sell Merchandise featuring the Plaintiff Matheson's Sigils, receiving a benefit derived directly from the commercial value of Plaintiff Matheson's copyrighted works.

284. Plaintiffs did not authorize Defendants' sale and commercial exploitation of Merchandise.

285. Plaintiff Matheson did not authorize Defendants to use the Sigils.

286. Plaintiff Matheson did not authorize Defendants to create, manufacture, or produce Sigil Merchandise containing the Sigils.

287. Plaintiff Matheson did not authorize Defendants to license use of the Sigils in the Sigil Merchandise to third parties.

288. Plaintiff Baxter did not authorize Defendants to use Plaintiff Baxter's performance in the Music Videos without compensation.

289. Defendants benefited by profiting from the Merchandise featuring Plaintiffs' likenesses and images.

290. Plaintiffs have not been compensated for the continued use of their likenesses and images in Merchandise.

291. In the event this Court finds that Plaintiff Matheson's prior interactions or relationship with Defendants created any "implied license" between Plaintiff Matheson and Defendants regarding the Sigils, which Plaintiff Matheson maintains there was and is not, such license was strictly limited to non-commercial, promotional use.

292. In the event the court finds the existence of an "implied license" to use the Sigils, Defendants have been unjustly enriched by the fair market value of her Sigils by using the Sigils on Merchandise without paying a licensing fee.

293. Plaintiff Matheson has not been compensated for Defendants'

continued use of the copyrighted Sigils.

294. Plaintiff Matheson has not been compensated for the continued commercial exploitation of the Sigils.

295. Defendants' continued commercial exploitation of the Sigils is to Plaintiff Matheson's detriment.

296. Defendants have been unjustly enriched by the exploitation of Plaintiffs' likenesses and images.

297. Defendants' ongoing commercial exploitation of the Merchandise, including profit obtained from the Merchandise containing Plaintiffs' likenesses and images, unduly benefits Defendants and causes ongoing financial harm, reputational harm, and lost profits to Plaintiffs.

298. Defendants' ongoing commercial exploitation of the Sigil Merchandise, including profit obtained from the Sigil Merchandise without authorization, unduly benefits Defendants and causes ongoing financial harm, reputational harm, and lost profits to Plaintiff Matheson.

299. Defendants have still not compensated Plaintiffs Federoff and Smerda for their Live Performances.

300. Defendants profited from the Live Performances, including without limitation from ticket sales.

301. Defendants' refusal to compensate Plaintiffs Federoff and Smerda for the Live Performances unjustly enriches Defendants to the detriment of Plaintiffs Federoff and Smerda.

302. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the Merchandise featuring Plaintiffs' likenesses and images.

303. Defendants have been unjustly enriched by the profits from the exploitation of Plaintiffs' likenesses and images in Merchandise.

304. It would be inequitable and unjust for Defendants to retain the profits derived from the unauthorized exploitation of Plaintiffs' likenesses without compensating Plaintiffs.

305. In the alternative to Counts 1 through 6 herein, Plaintiffs have no alternative remedy at law for the unjust enrichment of Defendants.

306. Plaintiffs are also informed and believe, and thereupon allege, that use of Plaintiffs' images and likenesses, copyrighted works, Live Performances, and Recordings, respectively, has conferred benefits on Defendants, for which Plaintiffs seek restitution. Defendants have profited by reason of their unlawful acts as alleged herein. Therefore, Plaintiffs also seek an order requiring the Defendants to disgorge all of their ill-gotten gains.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. Rule 38, Plaintiffs hereby demand a jury trial as to all issues so triable in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment against the Defendants as follows:

A. An Order finding Defendants liable for false designation of origin under 15 U.S. Code § 1125;

B. An Order finding Defendants liable for the misappropriation of Plaintiffs' likenesses and images;

C. An Order issuing injunctive relief requiring Defendants to destroy and cease selling all Merchandise, marketing materials, and any other goods featuring Plaintiffs' likenesses and images;

D. An Order requiring Defendants to provide a full accounting of all Defendants' profits from all Merchandise featuring Plaintiffs' likenesses and images;

E. An Order finding Defendants Cradle of Filth, Touring Entity, and

Davey liable for infringement of Plaintiff Matheson's copyrighted work, the Sigils;

F. An Order issuing injunctive relief requiring Defendants to destroy and cease selling any Sigil Merchandise and any goods featuring derivative works;

G. An Order requiring Defendants to provide a full accounting of all Defendants' profits from all Merchandise and any other goods featuring Plaintiff Matheson's copyrighted work, the Sigils, and any derivate works thereof;

H. An Order finding Defendant Davey liable for defamation;

I. An Order finding Defendants liable for unjust enrichment from the commercial exploitation of Plaintiff Baxter's performances in Music Videos;

J. An Order finding Defendants liable for unjust enrichment from the commercial exploitation of performances in the 2017 Release by Plaintiffs Smerda, Shaw and Matheson;

K. An Order finding Defendants liable for unjust enrichment from the commercial exploitation of performances in the 2021 Release by Plaintiffs Smerda and Shaw;

L. An Order finding Defendants liable for unjust enrichment from the commercial exploitation of performances in the 2023 Release by Plaintiffs Smerda and Matheson;

M. An Order finding Defendants liable for unjust enrichment from the commercial exploitation of performances in the 2025 Release by Plaintiffs Federoff and Smerda;

N. An Order requiring Defendants to provide a full accounting of all Defendants' profits from the 2017 Release, the 2021 Release, the 2023 Release, and the 2025 Release.

O. An Order (in the alternative) finding Defendants liable for unjust enrichment from the commercial exploitation of Plaintiffs' likenesses and images in Merchandise, copyrighted works, Live Performances, and Recordings, respectively;

P. An Order issuing injunctive relief requiring the Defendants to retract, remove, and correct all defamatory statements about Plaintiffs;

Q. An award for compensatory damages, in excess of the minimum jurisdictional limits of this Court and according to proof, caused by the acts forming the basis of this Complaint, restitution of all benefits conferred on Defendants by use of Plaintiffs' images and likenesses, copyrighted works, Live Performances, and Recordings, respectively, and disgorgement of all Defendants' ill-gotten gains, as well as damages for reputational harm, emotional distress, loss of income, business opportunities, and any other consequential damages;

R. An award for punitive damages in an amount sufficient to deter Defendants from engaging in similar conduct in the future;

S. An award of attorney's fees and costs as permitted by law, including under 15 U.S.C. § 1117(a) or Cal. Civ. Code § 3344(a);

T. An award for pre-judgment and post-judgment interest on any amounts owed; and

U. For all such other and further relief as this Court may deem just and proper.

//

//

RESPECTFULLY SUBMITTED this 31st day of August 2026.

By: ______________________________

Nicholas Soltman, CA Bar No. 277418
**Kinsella Holley Iser Kump Steinsapir LLP**
11766 Wilshire Blvd., Ste. 750
Los Angeles, CA 90025
Telephone: (310) 566-9800
Facsimile: (310) 566-9850
nsoltman@khiks.com

Krystle Delgado, AZ Bar No. 031219
*PHV application forthcoming*
**Delgado Entertainment Law, PLLC**
6803 E. Main Street, Ste. 1116
Scottsdale, AZ 85251
Telephone: (480) 248-0657
Facsimile: (480) 718-8759
krystle@delgadoentertainmentlaw.com
*Attorneys for Plaintiffs*